Ralph K. Holmes v. Commissioner.
Holmes v. Commissioner
Docket No. 87767.
United States Tax Court
T.C. Memo 1963-55; 1963 Tax Ct. Memo LEXIS 290; 22 T.C.M. (CCH) 214; T.C.M. (RIA) 63055; February 25, 1963
*290 Gabriel T. Pap. Esq., 51 E. 67th St., New York, N. Y., for the petitioner. Edward H. Hance, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent has determined deficiencies in income tax for the calendar years 1956, 1957, and 1958 in the respective amounts of $1,507.64, $1,807.18, and $1,593.91. Petitioner has conceded certain adjustments. The remaining questions are (1) whether petitioner has been properly notified of respondent's determination of the deficiencies and, if so, (2) whether respondent properly disallowed, for failure of substantiation, itemized deductions of certain alleged expenses and contributions. Findings of Fact The stipulated facts are hereby found accordingly. Ralph K. Holmes (hereinafter called petitioner) filed income tax returns for the years 1956 through 1958 with the district director of internal revenue, Upper Manhattan district, New York. During the years 1956, 1957, and 1958, petitioner was employed as a television lighting director by the Columbia Broadcasting System (hereinafter called CBS). Petitioner worked in the studios of CBS on the average of 3 to 4 days each week. Petitioner *291 had three weeks of vacation in each of the years 1956, 1957, and 1958. Petitioner's employment was based on a written union contract calling for an 8-hour day with time-and-a-half for overtime. Reimbursement of expenses incurred in the course of his employment was limited by the contract to taxicab fare for trips requiring less than 45 minutes from one studio to another. CBS has a staff of 23 lighting directors. The majority of the directors work on the regularly scheduled productions, calling for a normal routine and regular hours. Petitioner belonged to an "elite" group generally regarded as the most able directors, who usually worked on the larger productions and "spectaculars." The larger productions required longer hours and an erratic schedule, which resulted in a greater amount of overtime pay. During the years 1956, 1957, and 1958, petitioner itemized and deducted as "Other deductions" the following miscellaneous estimated expenses: 1956
1957
1958
Entertainment
$3,420.63 *
$3,565.81 *
$3,368.56 *
Christmas gifts of liquor
90.00 *
96.00 *
96.00 *
Gifts to secretaries
113.25 *
248.43 *
124.17 *
Repair of equipment
95.00 *
12.00 *
Professional supplies
139.23 *
338.89 *
Theater tickets
180.00 *
172.00 *
77.00 *
Taxis
158.00 *
246.00 *
**
Depreciation
75.13 *
215.63 *
Photography
211.67 *
Tips to assistant stagehands
62.00 *
Books, etc.
158.00 *
132.00 *
74.68
Periodicals, magazines, newspapers
92.00 *
96.00 *
72.00
Fee to Society of Television Lighting Directors
12.00 *
12.00
12.00
Union dues
516.97 *
478.60
585.37
United Scenic Artists #829
66.74 *
113.21
113.21
Telephone
146.10 *
143.41
170.16
Fee for preparing tax returns
50.00
80.00
110.00
Total - Itemized miscellaneous deductions
$5,524.72
$5,383.46
$5,431.67
*292 Work on a large production or "spectacular" often involved extended periods of continuous work. The schedule was uncertain, since it depended, to a large extent, upon the progress made by other elements of the production. As a result, the stagehands do not work 8-hour shifts and, for purposes of flexibility, the stagehands' contract did not specify any meal breaks. To complete the necessary work, it was the custom in the trade for the lighting director to send for coffee, sandwiches, and pastry to provide the added incentive to the electricians and stagehands. Petitioner deducted the following estimated expenses of providing a coffee *293 break three times a week for 7 or 8 people, at an estimated $.60 to $.65 per person, for 49 weeks as entertainment expense: 1956
1957
1958
$661.50
$836.06
$836.06 These expenses were deductible as ordinary, necessary, and proximately related to petitioner's business. It is not unusual for people in petitioner's profession to do some entertaining. Petitioner deducted estimated expenses for "entertainment" in 1956, 1957, and 1958. In addition to the foregoing payments for stagehands and electricians, these amounts were composed of the following estimated items: Petitioner deducted as estimated expenses payment for the meals of 2 to 4 people 2 to 3 times per week for 49 weeks at $2.50 to $3.00 per person as entertainment expenses, computed by him as follows: 1956
1957
1958
$765.62
$1,286.25
$882.00
Petitioner deducted as expenses incurred in his business the estimated cost of entertaining 1 to 3 people each week he was working for CBS and 4 to 10 people every 3 or 4 weeks, at an average cost of $5.50 to $6.50 per person, computed by him as follows: 1956
1957
1958
$374.00
$390.00
$637.00
742.50
616.00
773.50
773.50
*294 Petitioner deducted the estimated expense of an annual party as entertainment expenses incurred in his business as follows: 1956
1957
1958
$261.01
$280.00
$240.00
The entertainment expenses that were deductible as ordinary, necessary, and proximately related to petitioner's business, in addition to those for electricians and stagehands, amounted to $100 in each of the years 1956, 1957, and 1958. In 1958, petitioner deducted as expenses incurred in connection with his employment the following expenses: Christmas gifts of liquor
$ 96.00
Gifts to secretaries
124.17
Theater tickets
77.00
Tips to stagehands
62.00 Of the $359.17 so deducted, the expenses that were deductible as ordinary, necessary, and proximately related to petitioner's business amounted to $200.00. Petitioner deducted as a miscellaneous itemized deduction in 1958 $170.16 for telephone expenses. Petitioner and his roommate each paid six of the monthly telephone bills. The telephone expense for 1958 that was deductible as ordinary, necessary, and proximately related to petitioner's business amounted to $35.00. Separate Business Expenses In addition to his work at *295 CBS, petitioner also worked as a free-lance designer, including work on some Broadway shows, and as an interior decorator. During 1956, 1957, and 1958, petitioner reported the following gross profit and business deductions on Schedule C of his return: 1956
1957
1958
Gross profit
$724.90
$4,056.17
$325.00
Deductions
Rent
$159.26
$ 455.04
$455.04
Taxes
89.45
252.85
Depreciation
230.64
Subtotal
$248.71
$ 938.53
$455.04
Other business ex-
penses
Supplies
$ 82.20
$ 20.71
Taxis
36.00
$ 268.40
36.00
Telephone
15.00
50.00
Contacting cus-
tomers
280.00
175.00
Gratuities
340.00
13.79
Theaters, books
256.00
Stationery, post-
age
26.33
8.60
Books, publica-
tions
62.18
Photographic sup-
plies
368.41
Subtotal
$133.20
$1,651.32
$254.10
Total
$381.91
$2,589.85
$709.14
Petitioner shared an apartment with one roommate in the years 1956, 1957, and 1958. The apartment consisted of one bedroom, a living room, kitchen, bathroom, and foyer, and the monthly rent of $132.72 was shared equally. In 1957, petitioner purchased photographic supplies in the amount of $368.41. Petitioner claimed the following charitable *296 contributions on his tax returns for 1956, 1957, and 1958: 1956
1957
1958
Church
$110.00
$126.00
$118.00
Religious and chari-
table
265.00
320.00
160.00
Charity work for
the Holy Trinity
Church
180.00
YMCA
35.00
Total
$410.00
$446.00
$458.00
In his deficiency notice, respondent determined "that deductions claimed * * * have been disallowed for the reason that no competent evidence or appropriate information has been submitted in substantiation" of the following amounts: Deductions Dis-
allowed
1956
1957
1958
Contributions
$ 410.00
$ 200.00
$ 280.00
Sales tax
80.00
Business expenses
1,355.04
679.83
Miscellaneous
4,194.53
3,800.00
3,897.89
Totals
$4,684.53
$5,335.04 *
$4,857.72
The miscellaneous expenses exclusive of entertainment for the years in issue that were deductible as ordinary, necessary, and proximately related to petitioner's business were as follows: 1956
1957
1958
$1,330.19
$1,583.46
$1,768.78
Petitioner made no charitable contribution during the year 1956. The business expenses that were deductible as ordinary, *297 necessary and proximately related to petitioner's separate business as a free-lance designer and interior decorator for 1957 and 1958 were as follows: 1957
1958
Rent
$ 35.00
$35.00
Taxes
252.85
Depreciation
230.64
Other business expenses
751.32
29.31
Total
$1,269.81
$64.31
Opinion Petitioner contends that respondent, by merely disallowing gross amounts of the total miscellaneous deductions comprising a number of individual items for failure of substantiation, has not given petitioner proper notice as to precisely which items are in issue. Of course, the deficiency notice is sufficient "where it fairly advised the taxpayer that the [Commissioner] has determined a deficiency, gave the taxpayer the amounts thereof and the years involved." (C.A. 6, 1951), reversing on other grounds a Memorandum Opinion of this Court. Granting any inadequacy of the statement of respondent's position in the deficiency notice, the method for remedying the situation available to petitioner, e.g., (C.A. 6, 1958), affirming a Memorandum Opinion of this Court, *298 eliminates the requirement of any such drastic measure as treating the deficiency notice as a nullity. The same approach also disposes of petitioner's contention that, because of the lack of detail in the deficiency notice, he was unconstitutionally deprived of due process. And it is readily apparent that any obscurity resulting from the generality of the deficiency notice has been relieved by the position of the parties at trial [1] and upon brief. [2] Petitioner's briefs, [3] as well as his pleadings, indicate that petitioner has not been prejudiced and has had full opportunity to produce evidence in support of the contested amounts. . *299 The weaknesses in petitioner's position fall into two classes. First, accepting petitioner's testimony that a certain amount of entertaining and other expenditure was necessary to the earning of his income, there is inadequate evidence of the extent to which the expenditures were personal as compared with ordinary and necessary for petitioner's business. And, second, in spite of petitioner's repeated assertions, the amounts have not been adequately established so as to avoid the Cohan [4] rule. As to the former, so many of the activities claimed by petitioner to have business origins could as well be personal that "it is impossible to conclude that petitioner has borne the burden of showing in what respect and to what if any extent these items contributed to the earning of his income." . On the contrary, for all that appears, [in] addition to the failure to show a direct connection between expenditures and the petitioner's business, and the difficulty of showing the cost of entertaining separately from maintenance for personal and family use, there *300 is the difficulty of segregating purely social entertainments from those staged with a business objective. Entertainments in the home may be prompted by either social or commercial motives or they may partake of both characteristics, with either element predominating. . We are furnished with only general statements of the kind of person entertained at the almost constant meals or parties at which petitioner claims to have been host. Similarly, large expenses for books, periodicals, and theater are identified only in the most general terms. This renders especially apt a statement from petitioner's brief that "it is simply inconceivable and ununderstandable that somebody expends so much money if it is not necessary, if it is not helpful for his businesses * * * or if it is not directly connected and proximately related to his business. It is clear - from nothing else than from the amount - that it had to be expended." The difficulty is that for most of the items - parties, social gatherings, books, periodicals, the theatre, apartment rent, and home telephone - the amount can as easily be justified as being for purposes people *301 normally regard as personal as to be entirely required in so large an amount for the receipt of so small a comparative return. In addition to the burden imposed by the necessity of overcoming respondent's determination we think the presumptive nondeductibility of personal expenses may be overcome only by clear and detailed evidence as to each instance that the expenditure in question was different from or in excess of that which would have been made for the taxpayer's personal purposes. . Petitioner testified that it was not his purpose to enhance his prestige or standing in his calling. Yet we note that expense of "contacting clients" is included in deductions attributed to his free-lance work. In either event, as we said in : In some degree they [the expenditures] were also apparently a means of enhancing petitioner's prestige and the future possibility of expanding his * * * business so as to be the means of creating a capital asset comparable to good will. See 4 Mertens, Law of Federal Income Taxation, p. 367, and cases cited. And how these elements, particularly *302 the former [personal expenses], may be separated from actual business expenses is not, in spite of [that] petitioner's careful record-keeping, to any extent discoverable from the evidence. This inexactitude is, in the language of the Cohan case, the result of petitioner's own conduct. The amounts claimed are likewise conjecture, no matter how vociferously it may be contended otherwise. Petitioner kept no comprehensive records. The biggest figures are based on three estimates - number of occasions, number present, and cost per participant. If we were to accept petitioner's testimony in full, but take the lower of his figures in each case, the result would be a drastically smaller amount than that claimed. For example: Entertainment
Minimum
Year
Deduction
Estimate
1956
$3,420.63
$1,949.40
1957
3,565.81
1,873.85
1958
3,368.56
1,723.85 The amounts claimed were merely some sort of average. Yet there is no evidence that the average was actually spent. But we cannot accept petitioner's testimony and allocations at their face value in view of the apparent unreliability of his computations. [5] And as to certain miscellancous deductions disallowed for *303 want of substantiation but which were, nevertheless, permitted to be deducted to a large extent, the further burden resting on petitioner is to show that deductible expenses were incurred in excess of the amount which respondent allowed. ; . *304 Petitioner testified that the schedule of a TV lighting director varies constantly and since it is necessary for lighting directors to be available for emergency work, CBS requires its lighting directors to have a telephone in their home. Because of unusual hours and the location of some of the studios, petitioner stated that he often traveled by taxicab from his apartment to the studios at which he was currently working. In addition, petitioner testified to the occasional necessity of carrying equipment to the studio, with the result that he would take a taxicab and claim the initial and final trips as deductions. Finally, petitioner claimed at the trial that although he had an office at CBS, it closed at 5:00 p.m. and was not equipped with a drafting board, and that he did some work for CBS, and all of his free-lance designing and decorating work, in the bedroom of his apartment.[6] On all the evidence, we think that respondent's allowance for 1956 and 1957 of $1,330.19 out of total miscellaneous deductions of $2,104.09, and $1,583.46 out of total miscellaneous deductions of $1,817.65, respectively, is more than adequate. We make no determination as to the propriety of the deduction *305 for taxi expenses in 1957 and 1958, which respondent has allowed to some extent in 1957 and which has not been put in issue in 1958. ; , affirmed per curiam (C.A. 2, 1935), certiorari denied ; , reversed on other grounds (C.A. 10, 1933).
For the year 1958, we have the benefit of respondent's opening statement setting forth four of the five items in dispute. [7] However, the difficulty with relying on petitioner's recollection without the benefit of records, and the personal nature of many of these expenses, has been previously noted. [8] Taking these items as a group, our findings reflect our best judgment as to that portion which was deductible business expense. The same applies to the 1958 disallowance of the claimed cost of petitioner's personal telephone, all of which was also disallowed. [9]
*306 "Entertainment" constitutes the balance of those miscellaneous items disallowed which are still in issue. [10] Petitioner testified that while working on a particular production, it was customary for the people associated with the production, including the producer, the director, and the designer, to use mealtime to discuss specific problems involved in the production. The 3 or 4 people involved would alternately pay for the meal. However, in petitioner's reply brief, he asserts: I did not deduct mutual entertaining expenses when sometimes the producer picked up the check, on occasions the director and on occasions myself. We, accordingly, regard this portion of the claim as abandoned. In addition, while working on a production shown every week, petitioner claimed that he usually met with 3 or 4 people associated with the production at his apartment to discuss the problems involved in the production; and that, since these small parties involved specific productions and specific problems, he normally entertained a somewhat larger group of 4 to 10 people every 3 or 4 week for talk of a more general nature. Finally, he stated he gave one large *307 party each year, to which he invited many of the people with whom he had been associated in the theater and television. Normally, 80 to 120 people were invited to the annual party. We have already noted that, in spite of the assertions to the contrary, the deductions claimed, if allowable at all, are no more than estimates or allocations. We have, accordingly, used our best judgment in determining which, and how much, was actually expended as allowable deductions. . The figures set forth in our findings dispose of these items. The business expenses deducted on petitioner's Schedule C attached to his returns for 1957 and 1958 present much the same problem. In 1956, respondent allowed all of the expenses while in 1957 and 1958, he allowed $1,234.81 and $29.31, respectively. [11] In view of petitioner's failure to produce adequate business records for 1957, we approve as reasonable this portion of respondent's determination, , except that relating to the rent for both years, which is disposed of in our findings.[12] Taking the other items disallowed for 1958 as a group, our findings reflect our best judgment *308 as to that portion of the total which was deductible business expenses. The final contested issue is the contributions disallowed by respondent for 1956, 1957, and 1958. [13] Petitioner has presented no evidence on this issue and merely argues that, since respondent allowed $246 in 1957 and $178 in 1958, a similar amount should be allowed in 1956. At best, the allowance in 1957 and 1958 is merely evidentiary, see , and, with the complete absence of any other evidence, we cannot say that the presumption in favor of respondent's determination has been destroyed.
Decision will *309 be entered under Rule 50. Footnotes
*. Petitioner listed the indicated items under a separate schedule included in miscellaneous expenses as expenses incurred in connection with the requirements of his employment during 1956, 1957, and 1958 in the following gross amounts: ↩
1956
1957
1958
$5,474.72
$4,556.24
$4,294.25
**. Petitioner reported an estimated $530 in excess of reimbursed taxi fares claimed to have been spent in connection with his employment on a Form 2106 attached to his 1958 return and thereby reduced his reported salary and wages by a like amount.↩
*. The discrepancy is unexplained.↩
1. On opening statement, respondent's attorney stated, "If i wasn't clear before, the respondent has not allowed so-called entertainment expenses." As a result, the amounts remaining an issue without enumeration are as follows: ↩
1956
1957
1958
Expenses in con-
nection with em-
ployment (see fn.
2)
$5,474.72
$4,556.24
$4,294.25
Entertainment
3,420.63
3,565.81
3,368.56
Remainder
$2,054.09
$ 990.43
$ 925.69
Miscellaneous de-
ductions disal-
lowed exclusive
of entertainment
773.90
234.19
Allowed expenses
$1,280.19
$ 756.24
Respondent's opening statement also
indicates that the following items
for 1958 were disallowed, with the
remaining items being allowed in
full: Christmas gifts
$ 96.00
Gifts to secretaries
124.17
Theater tickets
77.00
Tips to assistant stagehands
62.00
Subtotal
359.17
Allowed expenses for 1958
$566.52
2. In his opening brief, respondent limits the contested deductions to those claimed on the separate schedule included in miscellaneous expenses as expenses incurred in connection with the requirements of petitioner's employment, plus telephone expenses in 1958, thus conceding the propriety of certain items as follows: ↩
1956
1957
1958
Miscellaneous ex-
penses
$5,524.72
$5,383.46
$5,431.67
Less: Items in issue
(see fn. 1)
5,474.72
4,556.24
4,294.25
Telephone
170.16
Expenses con-
ceded by Re-
spondent
$ 50.00
$ 827.22
$ 967.26
Books
74.68
Periodicals,
magazines
72.00
Fee to Society
of TV Light-
ing Directors
12.00
12.00
Union dues
478.60
585.37
United scenic
Artists
113.21
113.21
Telephone
143.41
Fee for tax re-
turns
50.00
80.00
110.00
Total
$ 50.00
$ 827.22
$ 967.26
3. Petitioner's opening brief contains schedules indicating that he was fully aware of respondent's disallowance of only those expenses deducted as incurred in connection with the requirements of his employment (see footnote 2) and also indicating concessions as to certain of the miscellaneous expenses.↩
4. (C.A. 2, 1930).↩
5. For example, the only receipts offered in evidence as proof of the amount claimed to have been spent for gifts to secretaries in 1958, indicate that petitioner first sought to include a gift sent to his mother which exceeded 30 percent of the total claimed. And, as to the deduction for the business use of his apartment and the amount of rent allocable thereto, it now appears that his total yearly rent was under $200 that the apartment consisted of 3 1/2 rooms, so that even if he used one room exclusively for his work, only 2/7ths of the total would be allocable to business. But, including his absences and since the room - his bedroom - must have served other purposes, and there being no evidence as to the actual extent of its use, our finding of $35 appears to be ample. Yet his claim is for $455.04. A similar comment could be made as to the deduction for business use of his personal telephone. Since the amount allowable is so small as to be no more than de minimis, it would be of little significance if it were even allocated completely to his free-lance work. That being so, it becomes unnecessary to consider the problems dealt with in , on appeal (C.A. 9).↩
6. See footnote 5, supra.↩
7. See footnote 1, supra. ↩
8. See footnote 5, supra; . ↩
9. See footnote 2, supra.↩
10. See footnote 1, supra.↩
11. On opening statement respondent's attorney limited the contested items for 1957 to $900 of the total amount of $1,651.32 deducted as other business expenses, as well as the entire rent item, and the following items in 1958: ↩
Rent
$455.04
Taxis
36.00
Contacting customers
175.00
Gratuities
13.79
Total
$679.83
12. See footnote 5, supra.↩
13. Petitioner is apparently not contesting respondent's disallowance of part of the contributions for 1957 and 1958, nor respondent's determination with respect to sales tax for 1956.↩